## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

|  |  |  |
|---|---|---|
| P.F., a minor by and | ) | |
| through his Natural Mother and Next Friend, | ) | |
| JESSICA FLAX, | ) | |
|  | ) | |
| Plaintiff, | ) | Case No. 2:17-cv-02184 |
|  | ) | |
| v. | ) | |
|  | ) | |
| ERIC L. HETZEL, DO, | ) | |
|  | ) | |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSE OPPOSING DEFENDANT'S
### MOTION FOR QUALIFIED PROTECTIVE ORDER ALLOWING EX PARTE
### INTERVIEWS AND MEMORANDUM IN SUPPORT

Plaintiff, by and through counsel of record, respectfully requests that this Court deny Defendant Hetzel's request for an order under HIPAA permitting defense counsel to engage in ex parte communications with Plaintiff's health care providers. Defendant's motion asks the Court for an advisory order authorize Plaintiff's health care providers to speak with defense counsel outside the presence of Plaintiff's counsel.  The motion is also cast as one seeking an order granting access to all plaintiff's medical records, relief that seems eminently reasonable.  However, the records purportedly sought, as well as an authorization to independently get such records has already been provided to defense counsel.  Thus, the real purpose of the motion is to seek an order regarding *ex parte* communications.

Plaintiff recognizes that in the past this Court has issued orders granting similar motions. However, the law has changed and defendants motion should be denied.  Because of this change, as highlighted in a thorough analysis of the issue by the Hon. James F. Vano in the District Court

of Johnson County,[1] Plaintiff respectfully requests this Court reconsider and modify its position

to protect patient confidentiality.

Also, as explained below in Part II, A, the requested motion is inconsistent with this

Court's guidelines regarding protective orders, which state that the Court cannot order non-

parties to abide by the terms of a protective order or to consent to jurisdiction. Similarly, an order

permitting or authorizing Plaintiff's non-party healthcare providers to meet *ex parte* with defense

counsel improperly gives such providers the illusion that such meetings are required by a court

when in reality this Court lacks authority over Plaintiff's healthcare providers.

## I.    INTRODUCTION

As a preliminary matter, Defendant Hetzel has already been provided with copies of all

of Plaintiff's relevant medical records or authorizations to collect those records. Plaintiff has not

withheld any medical information or objected to any discovery request regarding medical

information on the basis of the physician-patient privilege. There is no dispute that the physician-

patient testimonial privilege codified at K.S.A. § 60-427 is inapplicable in a personal injury

lawsuit. However, the physician-patient testimonial privilege under state law is distinct from

federally imposed laws creating a duty of confidentiality for physicians.

Defendant now requests that this Court assume responsibility over informal discovery by

issuing an order to no one in particular stating that they are authorized to meet *ex parte* with

defense counsel.

## II.    ARGUMENTS AND AUTHORITIES

Defendant seeks the ability to meet with Plaintiff's treating health care providers to

gather information about Plaintiff's health. Since 2003, however, a health care provider may

disclose "protected health information"—including oral information that would be exchanged in

---

[1] Attached hereto as "Exhibit A" and discussed in depth in Part II, B below.

2

*ex parte* meetings—only after certain procedural safeguards are met. It is those safeguards that are at issue here.

### A.    HIPAA does not contemplate the type of order defendant seeks.

This dispute depends on the interpretation of HIPAA's procedural requirements. The past 15 years have seen the issue of *ex parte* contact with plaintiffs' treating physicians come to the forefront of personal injury litigation. The primary reason is the enactment of the HIPAA Privacy Rule. Prior to enactment of the HIPAA Privacy Rule, Kansas federal courts issued a series of opinions holding that nothing barred a defense attorney from contacting a plaintiff's treating physician *ex parte*. The genesis of this line of decisions is *Bryant v. Hilst*, 136 F.R.D. 487 (D. Kan. 1990), wherein the court held that *ex parte* contacts with physicians, such as those sought by defendant's counsel, were permissible.[2] Although the Kansas appellate courts did not weigh in on the issue, some judicial districts enacted local rules permitting *ex parte* contact between defense counsel and a plaintiff-patient's treating physicians in personal injury lawsuits. It is the intersection of these substantive decisions and local rules with the procedural requirements of HIPAA that has led to the current controversy.

The regulatory framework known collectively as the HIPAA Privacy Rule became effective in 2003. It is important to keep in mind that the HIPAA regulations apply to health care providers or "covered entities." Specifically, it restricts the ability of health care providers to disseminate patients' "protected health information." The relevant provision of the HIPAA Privacy Rule is 45 C.F.R. § 164.512 (e) which states as follows:

---

[2] In *Bryant*, the court affirmed a Magistrate's order overruling the plaintiff's motion for a protective order preventing counsel for the defendant from conducting *ex parte* interviews. *See Bryant*, 136 F.R.D. at 488. First, the Magistrate reasoned that there was no privilege under K.S.A. § 60-427 that would preclude discovery, because the plaintiff's condition was at issue in the case. *See id*. at 488. The court then turned to the question of whether *ex parte* interviews were permissible. *Id*. at 488. Reasoning that defendants' counsel should have equal access to plaintiff's treating physicians, the Magistrate rejected a balancing test proposed by the patient-plaintiff and found that the physician's code of ethics restricting the dissemination of patient information was "not binding law." *Id*. at 492. Thus, the Magistrate concluded, and the district court affirmed, that counsel for the defendant could conduct *ex parte* interviews with the plaintiff's treating physicians, resting its holding in large part on the principle that "[h]ad the legislature intended otherwise, it would have so provided." *Id*. at 492.

Standard: Disclosures for judicial and administrative proceedings—

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
>> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request[3]; or
>>
>> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.[4]

In other words, pursuant to HIPAA, a health care provider may disclose protected health information pursuant to 45 C.F.R. § 164.512(e) in one of two circumstances, 1) in response to an order of a court or 2) in response to a subpoena if certain assurance are provided.

The pending dispute comes down to the meaning of the phrase "in response to a court order." The problem with defendant's argument is that there simply is no such thing as an order affecting the conduct of strangers to litigation. This inherent limitation is recognized by

---

[3] For the purpose of this subsection, "a covered entity receives satisfactory assurances from a party seeking protecting health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

> (A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);
> (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and
> (C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:
>> (1) No objections were filed; or
>> (2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

[4] For the purpose of this subsection, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or
(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

defendant in its inability to list specific doctors or health care facilities in their proposed order.

The proper methods for bringing such witnesses under the Court's authority are via a subpoena

to appear at a hearing or deposition, or to produce business records.

Instead, defendant's proposed order is essentially an order into thin air. It would not

compel anyone to do anything. Nor would it prevent anyone from doing anything. It simply

allows defense counsel to meet *ex parte* with plaintiff's treating physicians. It therefore fails to

qualify as a "court order," which Webster's Dictionary defines as: "an order issuing from a

competent court that requires a party to do or abstain from doing a specific act."[5] If, for example,

this Court were to grant defendant's proposed motion and present it to a treating physician who

then refused to meet with defense counsel, neither defendant nor this Court would have any

authority to compel the physician's cooperation. Put simply, because the covered entities are not

parties to this litigation, and have not been subpoenaed, there can be no "order" to which they

can respond with protected health information as required under 45 C.F.R. § 164.512(e)(1)(i).

> In the U.S. District of Kansas Guidelines for Protective Orders, this Court acknowledges:

> The protective order should refrain from stating that it is binding on non – parties
> or that the court has jurisdiction over non – parties to enforce the provisions of the
> protective order. The court cannot order a non – party to abide by the terms of a
> protective order or to consent to jurisdiction.

<http://www.ksd.uscourts.gov/guidelines-for-agreed-protective-orders-district-of-kansas/>.    In

this guidance, the Court appears to acknowledge that it cannot require non-parties to abide by its

orders.  But the requested order does just that by purporting to legally authorize such third parties

to avoid the HIPPA Privacy Rule.

Proponents of these motions often argue that the drafters of HIPAA never envisioned the

Privacy Rule as a bar to *ex parte* meetings like the ones sought by defendant. This is incorrect.

The Proposed Privacy Rule, prior to the final rule enactment, would have allowed a covered

---

[5] Merriam-Webster's Online Dictionary, http://www.m-w.com/dictionary/court%20order

entity to disclose information in the course of litigation in response to a court order *or* where a patient was a party to a lawsuit in which the patient's physical condition was at issue *and* the request for information was "authorized by law." *Standards for Privacy of Individually Identifiable Health Information*, 65 FR 82462-01. In this latter situation, the proposed rule would have allowed a covered entity to disclose protected health information upon receiving "a request … by legal counsel representing a party to litigation, with a written statement certifying that the protected health information requested concerned a litigant to the proceeding and that the health condition of the litigant was at issue in the proceeding." *Id*. This provision, however, was removed from the final rule and now, the information is to be disclosed only "in response to a subpoena, discovery request, or other lawful process" if other assurances are given.[6] As the Honorable J. Charles Droege of the Tenth Judicial District of Kansas has held, "state courts don't have the ability to say that we ignore a federal statute like HIPAA and move forward because the waiver of the physician/patient privilege is trumped by HIPAA." *Estate of Jacqueline Wyrick v. Evangelical Lutheran Good Samaritan Society*, Case No. 11CV4646, Transcript of Hearing on Motion for Ex Parte Communications, at 17:15-19 (District Court of Johnson County, Kansas, Nov. 29, 2011) (attached as Exhibit B). Judge Droege further held that "the HIPAA federal rule trumps . . . or is more restrictive than the Kansas law allowing those sorts of [*ex parte*] communications." *Id*. at 22:18-23:21.

In so holding, Judge Droege expressly adopted Judge David J. King's rationale from an order entered in Leavenworth County District Court. *Id*. at 22:16-17. Judge King held that "the Privacy Rule of HIPAA...is more restrictive than Kansas law. It thus pre-empts Kansas law and applies to counsel and physicians in informal discovery." *Heags v. Ashkar*, Case No. 2009-CV-69, Order Denying Defendant's Motion for an Order to Gather Personal Health Information and for Ex Parte Communications, at pg. 1 (District Court of Leavenworth County, Kansas, Jan. 29,

---

[6] The Final Rule action containing the commentary cited above can be found at 65 FR 82462-01, 2000 WL 1875566.

2010) (attached as Exhibit C). Judge King further held that "45 C.F.R. § 164.512(e), which permits disclosure of private health information in the course of judicial proceedings, **does not apply**" to *ex parte* meetings between counsel and treating physicians. *Id*. at 2 (emphasis added). Judge King cited with approval a Missouri appellate court decision in which the court "stated that counsel can use methods prescribed by the rules of discovery, namely depositions, to seek information from a plaintiff's treating physicians." *Id*. (citing *State ex rel. Proctor v. Messina*, 2009 WL 3735919 (Mo. App. Nov. 10, 2009)).

In 2014, the Hon. Glenn R. Braun of the District Court of Ellis County, Kan., ruled against a defendant doctor on a similar motion. Even though Ellis County had at that time a local rule permitting treating physicians to meet informally with attorneys (23rd Judicial District Local Rule 213), Judge Braun held that the rule was adopted before HIPAA's Privacy Rule, and that the Privacy Rule controlled the issue. Judge Braun agreed with other Kansas district courts that courts lack oversight to control the type of informal discovery defendants seek here and that the defendant could obtain the desired information through prescribed discovery methods. *Fisher v. DeCarvalho*, (Case No. 09-CV-167, Order Denying Defendant's Motion for Order to Gather Personal Health Information and for Ex Parte Communications (23rd Kansas Judicial District, March 26, 2014) (attached as Exhibit D).

Also in 2014, the Hon. Ben J. Sexton of the District Court of Morris County, Kan., issued a similar ruling when he specifically rejected the types of fairness arguments defendant has made in the instant motion. *Smith v. Bubenik*, (Case No. 13 CV 34, Order Denying Defendant's Motion to Allow Ex Parte Communication With Plaintiff's Treatment Providers, at pg. 2 (Eighth Kansas Judicial District, Aug. 11, 2014) (attached as Exhibit E).

The District Court of Saline County denied a similar defense motion in 2010, stating "there are clearly prescribed rules of discovery available to counsel to facilitate the access of that

information from treating physicians or other persons relative to the litigation in hand." *Gary D.*

*Gleason, Administrator of the Estate of Eunice M. Gleason v. Bradley Steuwe, M.D., et. al.*, Case

No: 2009 CV 102, Transcript of November 10, 2010 hearing, (District Court of Saline County,

Kansas) (attached as Exhibit F).

As the above cited cases illustrate, several Kansas district courts have recently moved

away from the *Bryant v. Hilst* line of cases in Kansas federal courts, contrary to Defendant's

contention that Kansas district courts have consistently endorsed *ex parte* meetings.

**B.      Kansas law does not provide a mechanism for court-sanctioned informal discovery.**

As discussed above, Defendant's proposed order would inject Court supervision over

non-party witnesses—more specifically, over informal interviews with non-party witnesses.

Outside of depositions or business records subpoenas, court supervision lacks any teeth, because

the non-party witnesses are not subject to a court's contempt power.

A Kansas opinion from the Hon. William B. Elliott of the 17th Judicial District well

summarizes the nullity that is Defendant's proposed order. In a medical negligence cause of

action, defendant requested that Judge Elliott issue an order similar to those sought here. Judge

Elliott refused, saying an order allowing *ex parte* communications with treating physicians had

no basis in Kansas law.

> HIPAA is not the issue. The issue in this case relates to alleged negligent acts
> committed by the defendant in the course of providing medical services to the
> plaintiff. It is up to the "holders of health information regarding [plaintiff]" to
> determine for themselves whether they are complying with HIPAA, independent
> of any "authorization" this Court might sign.
>
> More importantly, Courts do not exist to perform the function of a toothless
> watchdog. I am in the habit of issuing orders, not authorizations. **Failure to
> comply with a valid court order might have consequences; the same cannot
> be said about a refusal to observe an authorization.**
>
> The practice of authorizing is more of a legislative as opposed to a judicial
> function, and the legislature has "authorized" and in some instances even

mandated this Court to issue orders in certain defined circumstances, e.g. formal discovery proceedings and disputes as defined by statutes and existing case law. Should defendant desire to have statutes enacted that might permit courts to issue authorizations, his recourse is to propose or lobby for such legislation. Until that legislation is enacted, **this Court declines to grant defendant's request, thus leaving at defendant's disposal those well-defined, legislatively sanctioned, court supervised discovery procedures that might allow him to glean the information he seeks.**

*Cole v. Silan*, Case No. 2007-CV-24, Order, (District Court of Norton County, Kansas, December 4, 2007) (attached as Exhibit G) (emphasis added).

As the above opinion implies, the Kansas Rules of Civil Procedure do not contemplate nor provide any mechanism for the type of informal discovery Defendant seeks. The Kansas legislature has specified the proper methods of discovery under K.S.A. § 60-226(a), which include depositions, interrogatories, requests for production, physical and mental examinations, and requests for admission. The methods do not include *ex parte* interviews.

A similar conclusion was thoroughly analyzed and adopted by the Supreme Court of Missouri, which ruled that the type of *ex parte* interviews sought here by Defendant was improper. In *Proctor ex rel. v. Messina*, the Supreme Court of Missouri began with a thorough analysis of HIPAA's pre-emption language and its effect on Missouri law. 320 S.W.3d 145 (Mo. 2010) (Exhibit H). Similar to Kansas, no privilege in Missouri covers a litigant's or plaintiff's communications about his or her health conditions related to a personal injury or wrongful death claim with a physician. The court then analyzed the section of HIPAA most critical to the instant issue—whether the type of *ex parte* communication that defendants ask this Court to bless would come in the course of a judicial proceeding, as contemplated by HIPAA, or, whether it would fall outside the realm of court-governed discovery. Defense counsel in cases such as these routinely seek the type of order that defendant seeks here by invoking 45 C.F.R. § 164.512(e)(1), which permits the disclosure of protected health information "in the course of any judicial or administrative proceeding" and "in response to an order of a court."

> Given Missouri's law on the subject of *ex parte* physician communications, the meeting at which *ex parte* communications occurs is not a judicial proceeding because the trial court has no general oversight of the meeting or any control over it. Thus, 45 C.F.R. § 164.512(e), which permits disclosures in the course of judicial proceedings, does not apply to a meeting for *ex parte* communications, and consequently, a trial court has no authority to issue a purported HIPAA order advising the plaintiff's non-party treating physicians that they may or may not participate in informal discovery via *ex parte* communications.

*Id.*, at 157 (footnote omitted).

The remainder of the *Proctor* opinion aptly describes why the type of order Defendant seeks is not permitted by HIPAA. Because *Proctor's* analysis pertains primarily to HIPAA, and because neither Missouri nor Kansas has a formal discovery provision governing *ex parte* communications, *Proctor's* logic and reasoning is pertinent to this Kansas litigation. As in Kansas, the Missouri appellate court found nothing in its state's discovery rules authorizing a trial court to issue orders controlling informal discovery. Indeed, the type of order Defendant seeks would not in fact "order" or prohibit any party or entity from doing anything because the healthcare providers to whom it is addressed are not within the contempt power of the Court. The "order" would be at best, as the *Proctor* court said, an "advisory opinion." At worst, it would be an order into thin air and a nullity.

> [H]ere the trial court is communicating an advisory opinion to those not even a party to the underlying litigation. This advisory opinion creates substantial risk on the part of the treating physician who could unintentionally communicate protected health information outside the scope of information waived by the patient's lawsuit. Not only would that have the potential to prejudice the patient by going beyond the waiver and the scope of discovery, but it would also have potential detriment to the physician who would be subject to the severe penalties associated with a HIPAA violation.

*Id.* at 154, Fn. 6.

Back in Kansas, the most thorough analysis of this issue comes in a 20-page 2015 opinion issued by the Hon. James F. Vano of the Johnson County District Court. *Bisariya v. Sobolevskaya*, Case No. 14CV7546, August 6, 2015, Memorandum Decision. (Attached as

Exhibit A). At the outset, Judge Vano properly noted that none of plaintiffs' treating physicians were before the court, and that the defendant sought an "advisory opinion directed toward a non-party concerning a regulation for which that non-party is subject to enforcement by a federal agency that is also not before the Court." *Id*. at p. 2. The court then analyzed Kansas law and HIPAA at length before determining that the type of order Defendant seeks here does not comply with HIPAA's procedural "baseline." In short, Judge Vano wrote, for an order disclosing health information to qualify under HIPAA's auspices, the disclosure must occur under court supervision through formal discovery or other formal judicial procedures.

> Stated differently, the procedural "baseline" required under 45 C.F.R. 164.512(e) cannot be complied with in the context of *ex parte* communications. Because this requirement has not been met, this Court "has no authority to issue a purported HIPAA Order advising the plaintiff's non-party treating physicians that they may or may not participate in informal discovery via *ex parte* communications" in any manner endorsed by HIPAA and its regulations. Such an Order, as requested in this case, would be no more than an advisory opinion. **In fact, it would be the epitome of any advisory opinion, taking the proposed chat outside the confines of this judicial proceeding.**

*Id*. at p. 9 (citations omitted) (emphasis added).

Judge Vano went on to note that absent a privilege or other restrictions, parties are free to interview fact witnesses as they see fit. Despite this, defendants, including those in the instant case, routinely file these motions in order to cloak their interviews under some type of HIPAA blessing. Judge Vano wrote that such attempts are not permitted by HIPAA.

> Putting a signature upon an ill-advised Order for an activity to occur that is not within the contemplation of a judicial proceeding, although the Order itself may be covered by judicial immunity and have the appearance of a judicial mandate, does not convert the proposed interview into the kind of judicial proceeding that appears to be contemplated by the federal regulation.

*Id*.

The type of interviews for which defendants in the instant case seek an "order," Judge Vano wrote, "will never satisfy the procedural prerequisite of being 'in the course of judicial

11

proceedings' without a substantive change in the Kansas codes of procedures applicable to our

District Court." *Id*. at p. 10.

> Judge Vano concluded the opinion as follows:
>
> In the absence of a specific mandate from Congress or the federal agency responsible for enforcement of HIPAA, the Kansas Legislature, or the Kansas Appellate Courts, this Court is not going to lend itself or attach its signature, seal or *imprimatur*, to any form of simulated process giving the appearance of an Order **but actually being nothing more than an advisory opinion to a non-party to do some act outside of this judicial proceeding that the Court cannot enforce, monitor, sanction or effectively review**.

*Id*. at 15 (emphasis added).

Several other Kansas trial court opinions have held similarly. As referenced above, the

Hon. David J. King, chief judge of the First Judicial District, found that the lack of court

oversight would put the *ex parte* meetings sought by defendants outside the scope of judicial

proceedings, as contemplated by § 164.512(e). "In this respect, the Court finds persuasive the

logic and language used by the Missouri Court of Appeals in *State ex rel. Proctor v. Messina*,

[citation omitted], wherein the appellate court stated that defense counsel can use methods

prescribed by the rules of discovery, namely depositions, to seek information from a plaintiff's

treating physicians." *Heags v. Ashkar*, Case No. 2009-CV-69, (Exhibit C). Additionally, as

referenced above, the District Court of Saline County found similarly, stating "there are clearly

prescribed rules of discovery available to counsel to facilitate the access of that information from

treating physicians or other persons relative to the litigation in hand." *Gary D. Gleason,

Administrator of the Estate of Eunice M. Gleason v. Bradley Steuwe, M.D., et. al.*, Case No:

2009 CV 102, Transcript of November 10, 2010 hearing, (District Court of Saline County,

Kansas) (attached as Exhibit F).

Other Kansas trial court decisions have ruled against this type of motion. See, e.g.,

*Nordman v. Hildevran*, Case No. 09-CV-150, Order, (District Court of Barton County, Kansas,

February 1, 2010) (attached as Exhibit I); *Wilson v. Peniston*, Case No. 09-CV-206, Journal

Entry, (District Court of Butler County, Kansas, October 19, 2009) (attached as Exhibit J); *Elliott*

*v. Pope*, Case No. 05-CV-27, Order on Defendants' Motion to Obtain Heath Care Information

and for *Ex Parte* Communications with Physician, (District Court of Washington County,

Kansas, October 31, 2006) (attached as Exhibit K); *Kiekel v. Lawrence Family Practice Center,*

*P.A., et al.,* Case No. 2014-CV-327, Discovery Order, (District Court of Douglas County,

Kansas, May 20, 2015) (attached as Exhibit L).

More recently, the movement continued in 2017 to rule against ex parte interviews with

treating physicians. *Watts v. Oulai*, Case No. 2017-CV-008, Order, (District Court of Lyon

County, Kansas, May 10, 2017) (attached as Exhibit M); *White v. Manhattan Radiology, LLP, et*

*al.*, Case No. 2016-CV-258, Order, District Court of Riley County, Kansas, July 17, 2017)

(attached as Exhibit N); *Hiegert v. Yost*, Case No. 2016-CV-111, Order, (District Court of Lyon

County, Kansas, July 31, 2017) (attached as Exhibit O); *Sharon and Robert Rogers, individually,*

*and as heirs of Aryn Rogers v. Moll, et al.,* Case No. 2017-CV-027, Order, (District Court of

Butler County, Kansas, August 2, 2017) (attached as exhibit P). In *White v. Manhattan*

*Radiology*, Judge Wilson stated,

> "The Court recognizes that it and other judges within this district have previously
> sustained defendant's requests for *ex parte* communications with plaintiff's
> treating physicians but the Court is not bound by these prior decisions and
> believes those decisions to have been in error."

Exhibit N, p. 1.

No Kansas appellate court has ruled on this issue. But the Kansas Court of Appeals, in a

case where it decided that the instant issue was improperly raised, wrote: "Whether *ex parte*

interviews are a proper method of discovery in medical malpractice cases raises an interesting

question." *Foster v. Klaumann*, 42 Kan.App.2d 634, 668, 216 P.3d 671, 694 (Kan. App. 2009).

As discussed above, the alleged "court order" that Defendant now seeks—which does not direct or compel anyone to do anything with regard to *ex parte* meetings, which is addressed to every healthcare provider of any type in any state or nation, and which extends beyond the territorial jurisdiction of this Court—is not a valid "court order." Therefore, the documents Defendant has submitted for this Court's signature would fail to satisfy the Privacy Rule's "order" requirement, and accordingly, the Court should deny Defendant's motions.

## III.    CONCLUSION

Defendant's proposed order raises troubling procedural implications. The order into thin air lack any basis in Kansas or Federal law and fail to comply with HIPAA's Privacy Rule. Moreover, recent Kansas district court opinions on this subject, as well as this Court's guidelines regarding protective orders, have highlighted the procedural flaws with Defendant's proposed order and suggest that the instant motion be denied.

WHEREFORE plaintiff respectfully requests that this Court deny defendant Defendant's request for an order permitting the parties to conduct *ex parte* interviews of plaintiff's treating physicians and other health care providers.

Dated: October 20, 2017          **Respectfully submitted,**

**BARTIMUS, FRICKLETON & ROBERTSON, P.C.**

**BY:**     */s/ Michelle L. Marvel*
**JAMES P. FRICKLETON          KS #20602**
**MICHELLE L. MARVEL          KS #23511**
**11150 Overbrook Road, Suite 200**
**Leawood, KS 66211**
**(913) 266-2300 (tel)**
**(913) 266-2366 (fax)**
jimf@bflawfirm.com
mmarvel@bflawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

14

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 20th day of October, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mark A. Lynch
John Wesley Smith
Simpson, Logback, Lynch, Norris, P.A.
7400 West 110th Street, Suite 600
Overland Park, KS 66210
ATTORNEYS FOR DEFENDANT HETZEL, D.O.


_/s/ Michelle L. Marvel_
Attorney for Plaintiffs